UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASHLEY DELESPIN,<br><br>                    Plaintiff,<br><br>v.<br><br>BAYER HEALTHCARE<br>PHARMACEUTICALS, INC.,<br><br>                    Defendant. | Case No.<br><br><br><br>COMPLAINT FOR DAMAGES<br><br>JURY DEMAND |

Plaintiff ASHLEY DELESPIN (hereinafter referred to as "Plaintiff"), by and through her undersigned attorneys, hereby sues the defendant, BAYER HEALTHCARE PHARMACEUTICALS, INC. (hereinafter referred to as "Defendant"), and alleges as follows:

## BACKGROUND

1.     This is an action for damages suffered by Plaintiff as a direct and proximate result of the Defendant's negligent and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distribution, labeling, and/or sale of the Mirena® intrauterine contraceptive system (hereinafter referred to as "Mirena®" or "the subject product").

2.     At all times material hereto, Mirena® was designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by the Defendant herein.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy as to the Plaintiff exceeds $75,000.00, exclusive of interest and costs, and because Defendants are incorporated and have principal places of business in states and/or foreign states other than the states in which the Plaintiff resides.

4. This Court has supplemental jurisdiction over the remaining common law and state claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to at least some of Plaintiff's claims occurred, in part, in the District of Columbia and because Defendants transact business in this district.

## PARTIES

6. Plaintiff ASHLEY DELESPIN is a natural person and a resident of the District of Columbia. She resides at 300 50th St., N.E., Apt. 12, Washington, DC 20019.

7. Upon information and belief, Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. is, and at all relevant times was, a corporation organized under the laws of the State of Delaware, with its principal place of business located in the State of New Jersey. Defendant Bayer Healthcare Pharmaceuticals, Inc., can be served with process through its registered agent for service of process in California, Corporation Service Company, 2710 Gateway Oaks Dr, Suite I50N, Sacramento, California 95833.

8. Upon information and belief, at all relevant times Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. has transacted and conducted business in the State of New Jersey and derived substantial revenue from interstate commerce.

9. Upon information and belief Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. expected or should has expected that its acts would has

consequences within the United States of America, and the State of New Jersey in particular and derived substantial revenue from interstate commerce.

10.     Upon information and belief, and at all relevant times Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. was in the business of and did design, research, manufacture, test, advertise, promote, market, sell and distribute Mirena® as an intrauterine contraceptive system.

11.     BAYER HEALTHCARE PHARMACEUTICALS, INC. was formerly known as Berlex Inc., which was formerly known as Berlex Laboratories, Inc. and is the same corporate entity as Berlex, Inc. and Berlex Labratories, Inc.

12.     Bayer HealthCare Pharmaceuticals Corporation is in the business of designing, manufacturing, and marketing prescription drugs and women's healthcare products, including the intrauterine contraceptive system, Mirena®.

13.     At all times alleged herein, Defendant includes and included any and all parent subsidiaries, affiliates, division, franchises, partners, joint ventures, and organizational unites of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on its behalf.

14.     At all times relevant, Defendant was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, either directly or indirectly through third parties, subsidiaries or related entities, the contraceptive device, Mirena®.

## **FACTUAL ALLEGATIONS**

15.     Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein, and further alleges as follows:

16.     Mirena® is an intrauterine contraceptive system made of flexible plastic that is inserted by a healthcare provider during an office visit.

17.     The federal Food and Drug Administration (FDA) approved Defendants' New Drug Application for Mirena® in December 2000.  Today, millions of women in the United States use Mirena®.  It has been used by more the 15 million women worldwide.

18.     The system releases levonorgestrel, a synthetic progestogen, directly into the uterus for birth control.  Defendants admit "[i]t is not known exactly how Mirena® works," but provided that Mirena® may thicken cervical mucus, thin the uterine lining, inhibit sperm movement and reduce sperm survival to prevent pregnancy.

19.     The Mirena® intrauterine system ("IUS") is designed to be placed within seven (7) days of the first day of menstruation and approved to remain in the uterus for up to five years.  If continued use is desired after five years, the old system must be discarded and a new one inserted.

20.     The package labeling recommends that Mirena® be used in women who have had at least one child, suggesting that carrying a child to term may be complicated after Mirena® use.

21.     Up until May 29, 2014, when Bayer issued a self-described major change in the Mirena® label concerning the risk of perforation, Mirena®'s label did not warn about spontaneous migration of the IUS, but only stated that migration may occur if the uterus is perforated during insertion of the device.

22.     Mirena®'s label also described perforation as an "uncommon" event, despite the numerous women who have suffered migration and perforation post insertion, clearly demonstrating this assertion to be false.

23.     Defendant failed to alter their product packaging to reflect the growing number of MedWatch Adverse Event reports related to embedment of and perforation through the uterine lining and/or migration of the IUD through the uterine lining after the period of insertion.

24.     Defendant has a history of overstating the efficacy of Mirena® while understating the potential safety concerns.

25.     In or around March 2009, the Department of Health and Human Services' Division of Drug Marketing, Advertising, and Communications (DDMAC) regarding Defendant's advertising materials for Mirena®  that constituted misbranding of the IUD in violation of the Federal Food, Drug and Cosmetic Act and FDA implementing regulations.

26.     Specifically, DDMAC pointed out that Bayer failed to communicate any risk information, inadequately communicated Mirena® 's indications, and overstated the efficacy associated with the use of Mirena®  in Bayer-sponsored on internet search engines.

27.     DDMAC requested that Bayer immediately cease the dissemination of the volatile materials.

28.     Then, in or around December 2009, Defendant was again contacted by DDMAC regarding a consumer-directed program entitled "Mirena® Simple Style Statements Program," a live presentation designed for "busy moms." The Simple Style

program was presented in a consumer's home or other private setting by a representative from "Mom Central," a social networking internet site, and Ms. Barb Dehn, a nurse practitioner, in partnership with Defendant.

29.     This Simple Style program represented that Mirena® use would increase the level of intimacy, romance and emotional satisfaction between sexual partners. DDMAC determined that these claims were unsubstantiated and, in fact, pointed out that Mirena®'s package insert states that at least 5% of clinical trial patients reported a decreased libido after use.

30.     The Simple Style program script also intimated that Mirena® use can help patients "look and feel great." Again, DDMAC noted these claims were unsubstantiated and that Mirena® can cause a number of side effects, including weight gain, acne, and breast pain or tenderness.

31.     The portion of the Simple Style script regarding risks omitted information about serious conditions, including susceptibility to infections and the possibility of miscarriage if a woman becomes pregnant while on Mirena®.

32.     Finally, Defendant falsely claimed that Defendant's system required no compliance with a monthly routine in contradiction of patient instructions.

### CASE-SPECIFIC ALLEGATIONS

33.     Plaintiff ASHLEY DELESPIN had her physician in the District of Columbia insert the Mirena® IUS.

34.     As a result of Plaintiff ASHLEY DELESPIN's use of the Mirena® IUS she suffered migration of the device in her uterus resulting in injuries such as perforation and/or embedment and requiring surgical removal.

35.     Plaintiff's Mirena® IUS was surgically removed due to the injuries caused by the Mirena® IUS.

36.     Plaintiff continues to suffer from constant pain as a result.

37.     As alleged herein, as a direct and proximate result of the Defendant's negligence and wrongful conduct, and the unreasonably dangerous and defective characteristics of the subject product, Plaintiff suffered severe and permanent physical injuries, and has endured substantial pain and suffering.  Plaintiff has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future.  Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured.  Plaintiff's injuries and damages are permanent and will continue into the future.  The Plaintiff seeks actual and punitive damages from the Defendant as alleged herein.

## COUNT I

## PRODUCT LIABILITY – DEFECTIVE DESIGN

38.     Plaintiff repeats and incorporates by reference all other paragraphs of the Complaint as if fully set forth herein.

39.     At all times material to this action, the Defendant was responsible for designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling Mirena®.

40.     The subject product is defective and unreasonably dangerous to consumers.

41.     Mirena® is defective in its design or formulation in that it is not reasonably fit, suitable, or safe for its intended purpose and/or its foreseeable risks exceed the benefits associated with its design and formulation.

42.     At all times material to this action, Mirena® was expected to reach, and did reach, consumers in the State of New Jersey, and throughout the United States, including Plaintiff herein, without substantial change in the condition in which it was sold.

43.     At all times material to this action, Mirena® was designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendant in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce in ways which include, but are not limited to, one or more of the following particulars:

    a.      When placed in the stream of commerce, Mirena® contained unreasonably dangerous design defects and was not reasonably safe as intended to be used, subjecting Plaintiff to risks that exceeded the benefits of the subject product.

    b.      When placed in the stream of commerce, Mirena® was defective in design and formulation, making the use of Mirena® more dangerous than an ordinary consumer would expect, and more dangerous than other risks associated with the other contraceptives on the market for the prevention of pregnancy;

    c.      The subject product's design defects existed before it left the control of the Defendant;

d.  Mirena® was insufficiently tested;

e.  Mirena® caused harmful side effects that outweighed any potential utility; and

f.  Mirena® was not accompanied by adequate instructions and/or warnings to fully apprise consumers, including Plaintiff herein, of the full nature and extent of the risks and side effects associated with its use, thereby rendering Defendant liable to Plaintiff.

44.  In addition, at the time the subject product left the control of the Defendant, there were practical and feasible alternative designs, both in the form of the IUD and the drug emitted from the IUD, that would has prevented and/or significantly reduced the risk of Plaintiff's injuries without impairing the reasonably anticipated or intended function of the product. These safer alternative designs were economically and technologically feasible, and would have prevented or significantly reduced the risk of Plaintiff's injuries without substantially impairing the product's utility.

45.  As a direct and proximate result of the subject product's defective design, Plaintiff suffered severe and permanent physical injuries. Plaintiff has endured substantial pain and suffering. Plaintiff has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. The Plaintiff seeks actual and punitive damages from the Defendant as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT II

## PRODUCT LIABILITY – MANUFACTURING DEFECT

46.     Plaintiff repeats and incorporates by reference all other paragraphs of the Complaint as if fully set forth herein.

47.     At all times material to this action, Defendant was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling Mirena®.

48.     At all times material to this action, Mirena® was expected to reach, and did reach, consumers in the State of New Jersey and throughout the United States, including Plaintiff herein without substantial change in the condition in which it was sold.

49.     At all times material to this action, Mirena® was designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendant in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce in ways which include, but are not limited to, one or more of the following particulars:

a.     When placed in the stream of commerce, Mirena® contained manufacturing defects which rendered the product unreasonably dangerous;

b.     The subject product's manufacturing defects occurred while the product was in the possession and control of the Defendant;

c.      The subject product was not made in accordance with the Defendant's specifications or performance standards; and

d.      The subject product's manufacturing defects existed before it left the control of the Defendant.

50.     As a direct and proximate result of the subject product's manufacturing defects, Plaintiff suffered severe and permanent physical injuries. Plaintiff has endured substantial pain and suffering.  Plaintiff has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future.  Plaintiff has lost past earnings and has suffered a loss of earning capacity.  Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured.  Plaintiff's injuries and damages are permanent and will continue into the future.  The Plaintiff seeks actual and punitive damages from the Defendant as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT III

## PRODUCT LIABILITY - FAILURE TO WARN

51.     Plaintiff repeats and incorporates by reference all other paragraphs of the Complaint as if fully set forth herein.

52.     Mirena® is a defective and therefore unreasonably dangerous product, because its labeling fails to adequately warn consumers and prescribers of, among other

things, the risk of migration of the product post-insertion, development of endometriosis resulting from uterine perforation, or possibility that device complication may necessitate hysterectomy.

53.     Defendant researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce the pharmaceutical, Mirena® , and in the course of same, directly advertised or marketed the product to consumers or persons responsible for consumers, and therefore had a duty to warn of the risks associated with the use of Mirena® .

54.     Mirena® was under the exclusive control of Defendant and was unaccompanied by appropriate warnings regarding all of the risks associated with its use. The warnings given did not accurately reflect the risk, incidence, symptoms, scope or severity of such injuries to the consumer or physicians. The promotional activities of Defendant further diluted or minimized the warnings given with the product.

55.     Defendant downplayed the serious and dangerous side effects of Mirena® to encourage sales of the product; consequently, Defendant placed its profits above its customers' safety.

56.     Mirena® was defective and unreasonably dangerous when it left the possession of Defendant in that it contained warnings insufficient to alert Plaintiff to the dangerous risks and reactions associated with it. Even though Defendant knew or should have known of the risks and reactions associated with Mirena®, they still failed to provide warnings that accurately reflected the signs, symptoms, incident, scope, or severity of the risks associated with the product.

57.     Plaintiff used Mirena® as intended and as indicated by the package labeling or in a reasonably foreseeable manner.

58.     Plaintiff could not have discovered any defect in Mirena® through the exercise of reasonable care.

59.     Defendant, as a manufacturer of pharmaceutical drugs, is held to the level of knowledge of an expert in the field and, further, Defendant had knowledge of the dangerous risks and side effects of Mirena®.

60.     Plaintiff did not have the same knowledge as Defendant and no adequate warning was communicated to their physicians.

61.     Defendant had a continuing duty to warn consumers, including Plaintiff and her physicians, and the medical community of the dangers associated with Mirena®, and by negligently and/or wantonly failing to adequately warn of the dangers associated with its use, Defendant breached its duty.

62.     Although Defendant knew, or were reckless in not knowing, of the defective nature of Mirena®, they continued to design, manufacture, market, and sell Mirena® without providing adequate warnings and instructions concerning the use of Mirena® so as to maximize sales and profits at the expense of the public health and safety, in knowing, conscious, and deliberate disregard of the foreseeable harm caused by Mirena®.

63.     As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendant, Plaintiff suffered profound injuries, required and continues to require medical treatment, and incurred and continues to incur medical and hospital expenses.

64.     As a direct and proximate result of the subject product's defective and inappropriate warnings, Plaintiff suffered severe and permanent physical injuries. Plaintiff has endured substantial pain and suffering.  Plaintiff has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future.  Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured.  Plaintiff's injuries and damages are permanent and will continue into the future.  The Plaintiff seeks actual and punitive damages from the Defendant as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT IV

## PRODUCT LIABILITY – BREACH OF IMPLIED WARRANTY

65.     Plaintiff repeats and incorporates by reference all other paragraphs of the Complaint as if fully set forth herein.

66.     The Defendant designed, manufactured, marketed, distributed, supplied and sold the subject product for the prevention of pregnancy.

67.     At the time that the Defendant manufactured, marketed, distributed, supplied, and/or sold Mirena® , it knew of the use for which the subject product was intended and impliedly warranted it to be of merchantable quality and safe and fit for such use.

68.     Plaintiff, individually and through her prescribing physicians, reasonably relied upon the skill, superior knowledge and judgment of the Defendant.

69.     Plaintiff was prescribed, purchased, and used the subject product for its intended purpose.

70.     Due to the Defendant's wrongful conduct as alleged herein, Plaintiff could not have known about the nature of the risks and side effects associated with the subject product until after she used it.

71.     Contrary to the implied warranty for the subject product, Mirena® was not of merchantable quality, and was not safe or fit for its intended uses and purposes, as alleged herein.

72.     As a direct and proximate result of the Defendant's breach of implied warranty, Plaintiff suffered severe and permanent physical injuries. Plaintiff has endured substantial pain and suffering. Plaintiff has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. The Plaintiff seeks actual and punitive damages from the Defendant as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT V

## PRODUCT LIABILITY – NEGLIGENCE

73.     Plaintiff repeats and incorporates by reference all other paragraphs of the Complaint as if fully set forth herein.

74.     At all times material hereto, the Defendant had a duty to exercise reasonable care to consumers, including Plaintiff herein, in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling, and/or sale of Mirena® .

75.     The Defendant breached its duty of reasonable care to Plaintiffs in that it negligently designed, developed, manufactured, tested, inspected, packaged, promoted, marketed, distributed, labeled, and/or sold the subject product.

76.     Plaintiff's injuries and damages alleged herein were and are the direct and proximate result of the carelessness and negligence of the Defendant as follows:

a.      In its design, development, research, manufacture, testing, packaging, promotion, marketing, sale and/or distribution of the subject product;

b.      In its failure to warn or instruct, and/or adequately warn or adequately instruct, users of the subject product, including Plaintiff herein, of said product's dangerous and defective characteristics;

c.      In its design, development, implementation, administration, supervision and/or monitoring of clinical trials for the subject product;

d.      In its promotion of the subject product in an overly aggressive, deceitful and fraudulent manner, despite evidence as to the product's defective and dangerous characteristics due to its propensity to cause serious injury and/or death;

e.  In representing that the subject product was safe for its intended use when, in fact, the product was unsafe for its intended use;

f.  In failing to perform appropriate pre-market testing of the subject product;

g.  In failing to perform appropriate post-market testing of the subject product; and

h.  In failing to perform appropriate post-market surveillance of the subject product.

77.  The Defendant knew or should have known that consumers such as Plaintiff herein would foreseeably suffer injury as a result of the Defendant's failure to exercise reasonable and ordinary care.

78.  As a direct and proximate result of Defendant's carelessness and negligence, Plaintiff suffered severe and permanent physical injuries. Plaintiff has endured substantial pain and suffering. Plaintiff has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. The Plaintiff seeks actual and punitive damages from the Defendant as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT VI

## BREACH OF EXPRESS WARRANTY

79.    Plaintiff repeats and incorporates by reference all other paragraphs of the Complaint as if fully set forth herein.

80.    Defendant expressly warranted that Mirena® was safe and fit for use by consumers and users including Plaintiff for its intended purpose, that it was of merchantable quality, that it did not produce any dangerous side effects, and that it was adequately tested and fit for its intended use.

81.    At the time of the making of the express warranties, Defendant knew or should have known of the purpose for which Mirena® was to be used and warranted the same to be, in all respects, fit, safe, and effective and proper for such purpose.

82.    At the time of the making of the express warranties, Defendant knew or should have known that, in fact, said representations and warranties were false, misleading, and untrue in that Mirena® was not safe and fit for its intended use and, in fact, produces serious injuries to the user.

83.    Members of the medical community, including, but not limited to, Plaintiff's physicians, reasonably relied upon the skill and judgment of Defendant, and upon said express warranties, in prescribing, recommending and/or dispensing Mirena®.

84.    Plaintiff relied on the Defendant's express warranties.

85.    Defendant breached said express warranties, in that Mirena® was not safe and fit for its intended use and, in fact, causes debilitating and potentially lethal side effects with greater frequency than safer alternative methods of birth control.

86.    As a direct and proximate result of the Defendant's breach of express warranty, Plaintiff suffered severe and permanent physical injuries. Plaintiff has endured

substantial pain and suffering. Plaintiff has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. The Plaintiff seeks actual and punitive damages from the Defendant as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT VII

### REQUEST FOR PUNITIVE DAMAGES

87.    Plaintiff repeats and incorporates by reference all other paragraphs of the Complaint as if fully set forth herein.

88.    At all times material hereto, the Defendant knew or should have known that the subject product was inherently more dangerous than alternative methods of birth control.

89.    At all times material hereto, the Defendant attempted to misrepresent and did misrepresent facts concerning the safety of the subject product.

90.    Defendant's misrepresentations included knowingly withholding material information from the medical community and the public, including Plaintiff herein, concerning the safety of the subject product.

91.    At all times material hereto, the Defendant knew and recklessly disregarded the fact that Mirena® causes debilitating and potentially lethal side effects with greater frequency than safer alternative methods of birth control.

92.    Notwithstanding the foregoing, the Defendant continued to aggressively market the subject product to consumers, including Plaintiff herein, without disclosing the aforesaid side effects when there were safer alternative methods of birth control.

93.    The Defendant knew of the subject product's defective and unreasonably dangerous nature, as set forth herein, but continued to design, develop, manufacture, market, distribute and sell it so as to maximize sales and profits at the expense of the health and safety of the public, including Plaintiff herein, in conscious and/or negligent disregard of the foreseeable harm caused by Mirena®.

94.    Defendant intentionally concealed and/or recklessly failed to disclose to the public, including Plaintiff herein, the potentially life threatening side effects of Mirena® in order to ensure continued and increased sales.

95.    The Defendant's intentional and/or reckless failure to disclose information deprived Plaintiff of necessary information to enable her to weigh the true risks of using the subject product against its benefits.

96.    As a direct and proximate result of the Defendant's conscious and deliberate disregard for the rights and safety of consumers such as Plaintiff, Plaintiff suffered severe and permanent physical injuries. Plaintiff has endured substantial pain and suffering. Plaintiff has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer

economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future.

97.    The aforesaid conduct of Defendant was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers, including Plaintiff herein, thereby entitling the Plaintiff to punitive damages in an amount appropriate to punish the Defendant and deter them from similar conduct in the future.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against the Defendant as follows:

a.    Awarding actual damages to the Plaintiff incidental to Plaintiff's purchase and use of Mirena® in an amount to be determined at trial;

b.    Awarding treble and/or punitive damages to the Plaintiff;

c.    Awarding pre-judgment and post-judgment interest to the Plaintiff;

d.    Awarding the costs and the expenses of this litigation to the Plaintiff;

e.    Awarding reasonable attorneys' fees and costs to the Plaintiff as provided by law; and

f.    Granting all such other relief as the Court deems necessary, just and proper.

Date:   November 9, 2015

Respectfully submitted,

**GREENBERG & BEDERMAN, LLC**

By: _____

Jason W. Fernandez
Bar No. 977919
1111 Bonifant St.
Silver Spring, MD 20910
T: (301) 589-2200
F: (301) 589-6706
jfernandez@gblawyers.com
*Attorneys for Plaintiff*

**KABATECK BROWN KELLNER, LLP**
LINA MELIDONIAN, (*To be Admitted Pro Hac*)
CA State Bar No. 245283
DREW FERRANDINI, *(To be Admitted Pro Hac)*
CA State Bar No. 285102
df@kbklawyers.com
Engine Company No. 28 Building
644 South Figueroa Street
Los Angeles, CA 90017
Telephone (213) 217-5000

**MILSTEIN ADELMAN, LLP**
PAUL D. STEVENS, (*To be Admitted Pro Hac*)
CA State Bar No. 207107
pstevens@milsteinadelman.com
2800 Donald Douglas Loop North
Santa Monica, California 90405
Telephone (310) 396-9600

*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

The Plaintiff hereby demands a trial by jury on all Counts and as to all issues.

Date:   November 9, 2015

Respectfully submitted,

GREENBERG & BEDERMAN, LLC

By:

Jason W. Fernandez
Bar No. 977919
1111 Bonifant St.
Silver Spring, MD 20910
T: (301) 589-2200
F: (301) 589-6706
jfernandez@gblawyers.com
*Attorneys for Plaintiff*

**KABATECK BROWN KELLNER, LLP**
LINA MELIDONIAN, *(To be Admitted Pro Hac)*
CA State Bar No. 245283
DREW FERRANDINI, *(To be Admitted Pro Hac)*
CA State Bar No. 285102
df@kbklawyers.com
Engine Company No. 28 Building
644 South Figueroa Street
Los Angeles, CA 90017
Telephone (213) 217-5000

**MILSTEIN ADELMAN, LLP**
PAUL D. STEVENS, *(To be Admitted Pro Hac)*
CA State Bar No. 207107
pstevens@milsteinadelman.com
2800 Donald Douglas Loop North
Santa Monica, California 90405
Telephone (310) 396-9600

*Attorneys for Plaintiff*